[Cite as *State v. Spottedhorse*, 2026-Ohio-308.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

STATE OF OHIO, : 

    Appellee, :

vs. :

ROBERT B. SPOTTEDHORSE, :

    Appellant. :

:

CASE NO. CA2025-06-062

OPINION AND
JUDGMENT ENTRY
2/2/2026

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2024-11-1757

Michael T. Gmoser, Butler County Prosecuting Attorney, and Michael Greer, Assistant Prosecuting Attorney.

Michele Temmel, for appellant.

## O P I N I O N

**SIEBERT, J.**

{¶ 1} Robert B. Spottedhorse appeals the sentence imposed by the Butler County Court of Common Pleas after pleading guilty to manslaughter. He asserts the trial court failed to adequately consider required statutory factors before sentencing him to an

indefinite term of eight to 12 years instead of to community control. Upon review, we conclude Spottedhorse's sentence is supported by the record, and that the sentence is not otherwise contrary to law.

## Background

{¶ 2}  In February of 2025, a grand jury indicted Spottedhorse for murder and multiple counts of felonious assault for the killing of John.[1] Spottedhorse admitted his actions resulted in John's death. According to Spottedhorse, he and several friends—all riding in the same car—visited the home of another friend who tried to commit suicide the night before. Spottedhorse and the others intended to remove knives and other dangerous objects from the suicidal friend's home. While there, Spottedhorse saw John approach and get inside the still running car that Spottedhorse and his friends rode in. Believing John intended to steal the vehicle, Spottedhorse threw one of the knives he collected from the suicidal friend's home. Spottedhorse claimed he intended to throw the knife at the vehicle's tire to disable the vehicle, but the knife instead hit John in the chest, killing him.

{¶ 3}  After negotiations with the State, Spottedhorse pled guilty to an amended count of involuntary manslaughter. The State dismissed the felonious assault charges. At sentencing, Spottedhorse faced a maximum penalty of up to 16.5 years in prison. At sentencing, Spottedhorse, his counsel, and various family members urged the trial court to consider placing Spottedhorse on community control. They asserted his actions, while reckless, were not intended to result in John's death. They also pointed to Spottedhorse's limited criminal history and large family support. It should be noted that John's father asserted at the hearing that he did not believe Spottedhorse's story of what happened

---

1. "John" is a pseudonym adopted for this opinion for the purposes of privacy and readability. *See State v. Cansler*, 2025-Ohio-2558, ¶ 1, fn. 1 (12th Dist.), *Supreme Court of Ohio Writing Manual* 115 (3rd Ed. 2024).

and that Spottedhorse was "getting off easy" with the manslaughter conviction. John's father even believed that someone else with Spottedhorse may have killed John, but Spottedhorse took the fall.

{¶ 4} Before imposing Spottedhorse's sentence, the trial court stated it considered the applicable Ohio statutes (discussed in more depth below) as well as the record, charge, Spottedhorse's presentence-investigative report, and the statements made at the sentencing hearing. The court acknowledged Spottedhorse had a limited criminal history and obvious family support. However, the court "weigh[ed] that with the fact that there [was] a loss of life in this case" and that John's family suffered because of Spottedhorse's actions. The court stated that its sentence was "not a judgment of [Spottedhorse's] character." The court continued that the sentence was "based on the facts and circumstances in this case and the other materials that the Court has referenced." The trial court then concluded that Spottedhorse should not be placed on community control and imposed an indefinite, 8- to 12-year prison term.

{¶ 5} Spottedhorse now appeals.

**Applicable Law and Standard of Review**

{¶ 6} Under Ohio law, the "overriding purposes of felony sentencing" requires that sentences protect the public, punish an offender, and promote the rehabilitation of the offender. R.C. 2929.11 (the "Overriding Purposes Statute"). That statute also requires that imposed sentences balance the seriousness of the crime with its impact on a victim and be consistent with sentences imposed on similar crimes and offenders. *Id*. at (B). Ohio courts have discretion on how to balance and comply with these overriding purposes after considering various factors related to the seriousness of the crime and an offender's risk of recidivism ("Seriousness and Recidivism Factors"), including the offender's criminal history, whether the victim suffered injury (or death), and whether "[t]here are

substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense." R.C. 2929.12(E), (B)(2), (C)(4).

{¶ 7} To prevail on an appeal related to improper sentencing under these statutes, an appellant must present clear and convincing evidence that the sentence is not supported by the record or is "otherwise contrary to law." R.C. 2953.08(G)(2). A sentence is not "'clearly and convincingly contrary to law'" when the trial court considers the Overriding Purposes Statute as well as the Seriousness and Recidivism Factors, but the trial court is not required to make any specific factual findings on the record. *State v. Murphy*, 2025-Ohio-63, ¶ 15-16 (12th Dist.), quoting *State v. Clinger*, 2022 Ohio 3691, ¶ 39, citing *State v. Bryant*, 2022-Ohio-1878, ¶ 20. An appellate court does not have the authority to independently weigh the sentencing factors and substitute its judgment for that of the trial court's. *State v. Jones*, 2020-Ohio-6729, ¶ 42.

**Analysis**

{¶ 8} Spottedhorse argues on appeal that the trial court did not adequately consider the Overriding Purposes Statute as well as the Seriousness and Recidivism Factors. Spottedhorse asserts that (1) his minimal criminal history and good nature—as testified to by himself, his counsel, and family—show that he is a good person unlikely to commit future crime and (2) "except for the sad fact that [John] died" the facts of the case do not merit a prison sentence that would separate him from his family. Ultimately, Spottedhorse accuses the trial court of considering only the facts of the case to the exclusion of his good character. We disagree.

{¶ 9} Put simply, the trial court's statement that its sentence was "not a judgment of [Spottedhorse's] character" merely implied that the sentence would be a heavy one despite Spottedhorse's limited criminal history and the words of support from his family members. After all, the court acknowledged that it had to "weigh" such factors "with the

- 4 -

fact there [was] a loss of life in this case" and that John's family suffered because of Spottedhorse's actions. Essentially, Spottedhorse's arguments ask this court to do the inverse of what he asserts the trial court did—minimize the fact that someone died after considering the offender's good character. Ohio precedent expressly forbids the substitution of our judgment (or Spottedhorse's) for that of the trial court's when weighing the relevant statutory factors. We therefore conclude that Spottedhorse's sentence is supported by the record, and that the sentence is not otherwise contrary to law.

{¶ 10} Judgment affirmed.

HENDRICKSON , P.J., and M. POWELL, J., concur.

## J U D G M E N T   E N T R Y

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robert A. Hendrickson, Presiding Judge

/s/ Mike Powell, Judge

/s/ Melena S. Siebert, Judge